UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KENNETH GRAHAM,** | Crim. No. 21-645 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter comes before the Court on the omnibus pretrial motion of Defendant Kenneth Graham ("Defendant") to suppress evidence and to compel the Government to provide him with certain discovery in advance of trial. ECF No. 19. For the reasons set forth below, Defendant's motion to suppress is **denied** and the remaining motion for discovery is **denied in part and granted in part.**

I.  BACKGROUND

On January 18, 2021, a man (the "Suspect") entered the Boost Mobile store in East Orange, NJ ("Boost Mobile") and gave a partial phone number to a store employee before pointing a gun at that employee and stealing four iPhones and $473. Crim. Compl., Ex. A at Attachment B, ¶¶ 2-3, ECF No. 20-3; Cert. in Support of Communications Data Warrant ("CD Warrant Cert."), Ex. C at ¶ 6a, ECF No. 20-5. The robbery, captured on video surveillance, shows that the suspect wore a black facemask, black zip-up hoodie with a red insignia on the left side chest area, dark blue jeans, and tan construction boots. *Id.* at ¶ 6a. Video footage from surrounding businesses show the suspect fleeing the area in a black two-door Nissan Altima missing its front and rear bumpers (the "Vehicle"). *Id.*

On January 23, 2021, after conducting an Automated License Plate Reader ("ALPR")[1] search of the Vehicle, law enforcement discovered that the registered owner of the Vehicle ("Owner") resided in Newark, NJ. CWD Cert., ¶ 6a; Crim. Compl. Attachment B, ¶ 5. When officers interviewed the Owner, she stated that Defendant lived with her at

---

[1] ALPRs consist of high-speed cameras and related equipment mounted on vehicles or in fixed locations that automatically locate and photograph license plates and vehicles that come within range of the device. The license plate images are then converted into searchable data. *See* ALPRFactsheet_20210105_final508 (dhs.gov) or https://www.dhs.gov/sites/default/files/publications/2021_st_alprfactsheet_20210105_final508.pdf.

1

the address in Newark and was the only other person who used her Vehicle. Crim. Compl., ¶ 6. The Owner was shown video surveillance footage of the Suspect leaving the robbery at Boost Mobile and identified the driver of the Vehicle as Defendant. *Id.* at ¶ 6.

On January 25, 2021, law enforcement conducted surveillance on the Vehicle and observed Defendant in the driver seat. Police Report, Ex. B, ECF No. 20-4. Law enforcement approached and smelled an odor of marijuana emanating from Defendant. He was found in possession of six green tubs of green substance suspected to be marijuana and then placed under arrest. CD Warrant Cert., ¶ 6b. A search incident to arrest revealed Defendant was also in possession of six glassine envelopes that contained a beige powdery substance suspected to be heroin, and a black LG cellphone in a red protective case. Police Report. The Vehicle was towed to police headquarters pending a search warrant. *Id.* Defendant was charged with robbery in violation of N.J.S.A. 2C:15-1a(2), unlawful possession of weapons charges in violation of N.J.S.A. 2C:39-5b(1), 2C:39-7, 2C:39-4a(1), and unlawful drug possession charges in violation of N.J.S.A. 2C:35-10a(4) and 2C:35-10a(1). At the time of the arrest, Defendant was on federal probation. Cert. in Support of Residence and Cellphone Warrant ("Cellphone Warrant Cert."), Ex. E, ¶ 5F, ECF No. 20-7.

Following Defendant's arrest, law enforcement submitted a single supporting warrant certification and obtained separate search warrants for Defendant's residence and the cellphone recovered during Defendant's arrest. *See* Cellphone Warrant, Ex. F, ECF No. 20-8; Residence Warrant, Ex. G, ECF No. 29-9. The search of Defendant's cellphone revealed a photograph of a man who appears to be Defendant wearing seemingly the same sweatshirt worn by the Suspect during the robbery.

Law enforcement also sought and obtained a Communications Data ("CD") Warrant for information from T-Mobile. CD Warrant, Ex. D, ECF No. 20-6. Location (historical cell-site) records associated with Defendant's cellphone number indicate that the phone was in East Orange near the location of Boost Mobile around the time of the robbery. Crim. Compl., ¶ 7. The partial phone number that Defendant provided to the T-Mobile store employee was found to match the Vehicle Owner's cellphone number. *Id.*; *see also* Supplementary Investigation Report, Gov't Opp'n Br., Ex. 1, ECF No. 21-1.

On August 19, 2021, Defendant was indicted for Hobbs Act Robbery, 18 U.S.C. § 1951(a) and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Defendant now moves: 1) to suppress evidence from the CD and Cellphone Warrants, as well as from the warrantless search of the ALPR database; 2) to compel the Government to disclose Fed. R. Evid. 404(b) evidence, *Brady* material, any statements made by Defendant that the Government intends to utilize in its case-in-chief; 3) compel the Government to review the personnel files of law enforcement officers and disclose relevant evidence therefrom; 4) compel the Government to prepare and produce a pretrial summary

of expert opinion testimony; and 5) permit Defendant to file additional pretrial motions as necessary. Each of Defendant's requests in his pretrial motion will be addressed in turn.

## II. DISCUSSION

### A. Motion to Suppress

The Fourth Amendment protects against "unreasonable searches and seizures." *U.S. Const. Amend. IV.* "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002). "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995). Once the defendant establishes a factual basis for his motion, the "burden shifts to the government to show that the search or seizure was reasonable." *Id.*

Defendant maintains that in violation of the Fourth Amendment, the Cellphone Warrant lacked probable cause, the CD Warrant used to obtain his historical cell-site information from T-Mobile lacked sufficient particularity, and that search of the ALPR database required a warrant. Defendant's motion to suppress will be decided on the papers because there are no issues of fact material to this motion that need to be decided. *See United States v. Hines,* 628 F.3d 101, 105 (3d Cir. 2010) ("A motion to suppress requires an evidentiary hearing only if ... there are disputed issues of material fact that will affect the outcome of the motion to suppress."). Each issue will be addressed in turn.

#### 1. Probable Cause to Search Cellphone[2]

The initial probable cause determination made by the issuing judge is to be afforded "great deference." *Illinois v. Gates,* 462 U.S. 213, 236-37 (1983). The reviewing court's duty is simply to ensure that the issuing judge had a "substantial basis" for determining that probable cause existed." *Id.* at 238–39. In deciding on a search warrant application, "the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Stearns,* 597 F.3d 540, 554 (3d Cir. 2010) (citing *Gates,* 462 U.S. at 238).

Probable cause for a warrant does not require direct evidence linking a defendant's cellphone to the suspected crime. *See United States v. Hodge,* 246 F.3d 301, 305 (3d Cir. 2001) (citing *Conley,* 4 F.3d at 1207). Rather, "[a] court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Hodge,* 246 F.3d at 305-06 (citing *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000)). In *United States v. Brewer,* 708 Fed. App'x. 96 (3d Cir. 2017), where the affidavit contained evidence of the defendant's participation in the

---

[2] Defendant does not challenge the probable cause supporting a warrant to search his residence.

robbery and of defendant's ownership of the phone, the magistrate's determination of probable cause was upheld as reasonable despite the lack of a direct "nexus" between the defendant's cellphone and the Hobbs Act robbery for which the defendant was convicted. *Brewer*, 708 Fed. App'x. at 99-100; *see, e.g., United States v. Johnson*, 2019 WL 5288015, at *13 (W.D. Pa. Oct. 18, 2019) (finding substantial basis for probable cause where warrant affidavit contained ample evidence of defendant's link to alleged crime and defendant's cellphone ownership). Likewise, in this case, the underlying affidavit provides enough evidence to connect Defendant to the robbery. Defendant matched the physical description of the robbery suspect captured on video, the Vehicle Owner stated that Defendant was the only person who uses her car, and when she was shown still photos of the suspect and suspect Vehicle before and during the robbery, she identified her Vehicle and Defendant. Cellphone Warrant Cert., ¶ 5.C, E. Moreover, the underlying certification states that the cellphone was in Defendant's possession at the time of his arrest, which is sufficient grounds to reasonably infer that the cellphone belonged to Defendant. *See, e.g., Johnson*, 2019 WL 5288015, at *13, n.16 (recovery of phone from defendant's person at time of arrest was sufficient evidence of ownership). Here, as in *Brewer*, the issuing judge had a substantial basis for finding probable cause to support a search warrant for Defendant's cellphone.

Apart from challenging probable cause, Defendant also contends that the underlying certification fails to indicate that a search warrant of his cellphone was even being sought because the only mention of the cellphone in the body of the affidavit is that he was in possession of a black LG cellphone in a red case that was seized upon his arrest. *See* Cellphone Warrant Cert., ¶ 5.D. However, the header on each page of the warrant application includes reference to the cellphone, which Defendant recognizes as making "clear that the certification is provided in support of searches of both residence and cell phone." Def.'s Mot. at 10. Further, the certification explains there is "certain property *and data*" (emphasis added) that may evidence the specifically stated crimes. Cellphone Cert., ¶ 3. In any case, notwithstanding the sloppiness of the certification, "[a]n affidavit which contains unwise, poorly crafted or otherwise defective statements may nevertheless support a valid warrant." *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993). As discussed above, the reviewing judge issued such a warrant because there was a substantial basis for finding probable cause to do so.

Defendant's motion to suppress evidence obtained from execution of the Cellphone Warrant is **denied.**

### 2. Particularity of Communications Data Warrant

The Fourth Amendment mandates all warrants to "particularly" describe the items to be seized. This requirement invalidates "general warrants" that "'vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence.'" *United States v. Ninety–Two*

4

*Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002) (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)).

Defendant argues that the CD Warrant Certification failed to satisfy the Fourth Amendment's "particularity requirement" and therefore moves to suppress information regarding the location of the cellphone at the time of the robbery.[3] The underlying certification describes subscriber-related information to be seized from T-Mobile records regarding Defendant's cellphone number including the contents of stored communication, call detail records, and "historical cell site activity and cell site locations for time period 12/01/2020 through [January 26, 2021], for evidence of the crimes of Unlawful Possession of a Weapon, contrary to N.J.S.A. 2C:39-5b, and Possession of a Weapon for Unlawful Purpose, contrary to N.J.S.A. 2C:39-4(a); ..." CD Warrant Cert., ¶ 3. The information sought from T-Mobile was in part to "help establish the locations of the phones at the time of the crimes being investigated." *Id.* at ¶ 7. The Court finds the information to be searched and seized in the CD Warrant was as specific as circumstances allowed. *See, e.g., United States v. Bass*, 785 F.3d 1043, 1050 (6th Cir. 2015) (finding to be reasonable "warrant [that] authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs" because at time of seizure, officers could not have known where in phone or in what format information was located).

Moreover, "[a] warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018); *see also United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018) ("It is enough, . . . if the warrant cabins the things being looked for by stating what crime is under investigation."); *see, e.g., United States v. Reese*, No. 19-257, 2021 WL 4429429, at *5-6 (W.D. Pa. Sept. 27, 2021). Here, the warrant expressly limited the search to evidence related to the charged crimes.

Next, Defendant challenges the validity of the CD Warrant on the grounds that the supporting affidavit sought evidence of Defendant's "other potential crimes" as well as proof of communications that show an "ongoing conspiracy and place the suspects in communication with each other, other possible individuals, as well as the same location." CD Warrant Cert., ¶ 7a. Although the Government concedes that the supporting *affidavit* should not have referenced conspirators and other potential crimes, *see* Gov.'t Letter Br. at n.7, the *warrant* itself limited the search and seizure to evidence of the unlawful possession charges and did not authorize a search for evidence of any "other" crime or conspiracy. Even if the CD Warrant had "authorize[d] the seizure of items as to which there [was] no

---

[3] Defendant argues that the supporting affidavit fails to state how law enforcement obtained Defendant's cellphone but does not explain how that violates the Fourth Amendment's particularity requirement.

5

probable cause," *Ninety-Two Thousand*, 307 F.3d at 149 (citing *Christine*, 687 F.2d at 753-54), any improper references to "other crimes" in the supporting affidavit would not have invalidated the entirety of the warrant. The Court is permitted to redact or "strike[e] from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." *Id.* (citing *Christine*, 687 F.2d at 754).

Finally, Defendant objects that the time frame for which law enforcement sought the warrant extended beyond January 18, 2021 when the crime occurred. However, as explained in the underlying affidavit, information as to the days and weeks immediately before the crimes occurred was sought to "establish a pattern of use" showing that "a single individual has maintained possession of the phones and utilized them on other dates." CD Warrant Cert., ¶ 7. *See, e.g., United States v. Ray*, 541 F. Supp. 3d 355, 397 (S.D.N.Y. 2021) (approving acquisition of several years' worth of historical cell-site location information because "the specific events identified in the CSLI Warrant Affidavit had probative value that extended beyond the particular dates on which those events occurred.").

In sum, the warrant did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished." *Ninety–Two Thousand*, 307 F.3d at 149 (quoting *Christine*, 687 F.2d at 753). Reading the application "in context" and "as a whole," *Conley*, 4 F.3d at 1208, the Court finds the CD Warrant was sufficiently particularized. Defendant's request to suppress evidence resulting from the CD Warrant is **denied.**

### 3. Automated License Plate Reader

Defendant moves to suppress evidence obtained from the warrantless search of the ALPR database showing the proximity of the Vehicle to the location of the robbery on January 18, 2021. To succeed, Defendant must "demonstrate that he has a reasonable expectation of privacy in the subject of the Government's warrantless search." *United States v. Yang*, 958 F.3d 851, 858 (9th Cir. 2020). Relying on the Supreme Court's decision in *Carpenter v. United States,* 138 S. Ct. 2206 (2018), Defendant contends he has a reasonable expectation of privacy in his location and movements as determined from an ALPR database. In *Carpenter,* the Court held that search of cell site location information ("CSLI") required a search warrant because an "individual maintains a legitimate expectation of privacy in the record of his physical movement as captured through CSLI." *Id.* at 2217. The Court explained that because individuals "compulsively carry cell phones with them all the time," tracking the location of a cell phone provides "near perfect surveillance." *Id.* at 2218. As with GPS tracking, which so extensively surveils public travel that it constitutes a search under the Fourth Amendment, *see United States v. Jones,* 565 U.S. 400, 415 (2012), time-stamped cell phone location data also "provides an intimate

6

window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Carpenter*, 138 S. Ct. at 2217 (citing *Jones*, 565 U.S. at 415 (concurring opinion of Sotomayor, J.)).

In contrast to CSLI and GPS technology, however, courts have held that law enforcement's use of the ALPR database does not infringe upon an individual's reasonable expectation of privacy because it does not reveal intimate details of an individual's daily life, nor does it track a person's every movement. *See, e.g., USA v. Rubin*, 556 F. Supp. 3d 1123, 1130 (N.D. Cal. 2021) (concluding that accessing ALPR database to determine that suspect owned Jaguar based on surveillance video that captured suspect entering blue Jaguar shortly after robbery was not Fourth Amendment search); *United States v. Bowers*, No. 18-CR-00292, 2021 WL 4775977, at *3 (W.D. Pa. Oct. 11, 2021) (agreeing "with the Government that its acquisition of ALPR data was not a search within the meaning of the Fourth Amendment."). In this case, law enforcement's use of ALPR database limited to a single occurrence on a single day did not reveal private details of Defendant's life. Defendant has failed to meet his burden to show that he has a reasonable expectation of privacy in his location and physical movement as captured through ALPR. Accordingly, Defendant's motion to suppress evidence derived from the warrantless search of the ALPR database is **denied**.

### 4. Good Faith Exception

"The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08. Under the good faith exception, a court should only suppress evidence "if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring v. United States*, 555 U.S. 135, 143 (2009). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984).

Here, even if the Cellphone and CD Warrants were defective, Defendant has not advanced any cognizable reason why the good faith exception is inapplicable. Instead, Defendant makes only the bald assertion that officers acted recklessly based on the incorrect premise that there was no probable cause. *See* discussion *supra*. Moreover, the officers' reliance on the warrants, which were issued by neutral judges, was objectively reasonable. Even if the CD Warrant was not sufficiently particularized, "[s]imply because a warrant is a general warrant does not mean that the officer could not have relied upon it in good faith." *United States v. Walker*, No. 13-64, 2015 WL 3485647, at *5 (D. Del. May 29, 2015), *aff'd*, 677 F. App'x 53 (3d Cir. 2017); *but see United States v. Fleet Management*

*Ltd.*, 521 F. Supp. 2d 436, 445 (E.D. Pa. 2007). Likewise, even if use of the ALPR database had constituted a search, the good faith exception would apply. Defendant has not shown that officers should have known that use of ALPR is a Fourth Amendment search. *See, e.g., New York v. Class*, 475 U.S. 106, 114 (1986) ("[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search'"). Accordingly, suppression of evidence obtained from the Cellphone and CD Warrants as well as the warrantless search of the ALPR database is inappropriate under the good faith exception to the exclusionary rule.

### B. Fed. R. Evid. Rule 404(b)

Defendant requests that the Government disclose evidence of other crimes, wrongs, or acts that it may seek to introduce against him under Fed. R. Evid. Rule 404(b). The Government acknowledges its obligation regarding Rule 404(b) evidence and is ordered to provide Defendant with notice of its intent to introduce Rule 404(b) evidence by filing a motion *in limine* at least 14 days before trial.

### C. *Brady* and *Giglio* Material

The Government represents that as to any exculpatory material that comes into its possession, it has and will continue to abide by its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) and will voluntarily disclose any *Giglio* material well before trial. Accordingly, no further order regarding the Government's *Brady* and *Giglio* disclosure obligations is necessary at this time. Defendant's request to compel the Government to disclose *Brady* material is **denied**.

### D. Personnel Files

Defendant seeks to compel the Government to review the personnel files of law enforcement officers who participated or will testify in this case, and to review any material or evidence outside of the personnel files that may touch upon the credibility of the law enforcement officers. *See United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1990) (finding that "obligation to examine the files arises by virtue of the making of a demand for their production."). If the reviewed materials raise any questions of relevance, Defendant asks for *in camera* review. The Government does not address this specific request in its opposition brief.

Although *Brady* does not require that the Government make personnel files available for Defendant's general perusal, it does "mandate[] that the prosecution disclose impeachment material that is exculpatory to the defendant." *United States v. Perla*, No. 20-281, 2022 WL 1270944, at *1 (W.D. Pa. Apr. 28, 2022) (quoting *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998)). The Government must "take the minimal steps necessary to acquire information of which the prosecution should be aware" and *Brady* obligations apply to all material within the Government's "actual or constructive

8

possession," not just knowledge. *Maynard v. Gov't of Virgin Islands*, 392 F. App'x 105, 113 (3d Cir. 2010) (cleaned up); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("individual prosecutor[s have] a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). Accordingly, Defendant's request is **granted.** As soon as practicable, the Government shall direct the custodian of the personnel files at issue to review those files and inform the prosecution of the results of that inspection. *See Dent*, 149 F.3d at 191. Any impeachment evidence must be turned over at the appropriate time with other *Giglio* materials.

### E. Rough Notes

Defendant requests that the Government preserve and disclose rough notes prepared by or in connection with any witnesses or prospective witnesses in this matter. Although the Government has not set forth its position on this issue, under Third Circuit precedent, "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). However, such materials are only subject to production "to the extent that they either contain *Brady* material or constitute statements falling under the Jencks Act." *United States v. Santos*, No. 18-585, 2020 WL 134578, at *9 (D.N.J. Jan. 13, 2020) (citation omitted); *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977) ("rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the appellant under the rule of *Brady* [], or the Jencks Act."). Accordingly, Defendant's motion is **granted**; as soon as practicable, the Government shall review all witness notes for discoverable material. Any *Brady, Giglio*, or Jencks Act material is ordered to be disclosed at the appropriate juncture.

### F. Defendant's Statements

Defendant moves to compel the Government to identify any of his statements that it seeks to introduce in its case-in-chief in order to determine admissibility of those statements. The Government correctly contends that this request is premature given that a trial date has not yet been set. Moreover, this Court has received no indication that the Government will not abide by its obligations to produce discovery under Fed. R. Crim. P. Rule 16(a)(1). Thus, Defendant's request is **denied.**

### G. Summary of Expert Testimony

Defendant seeks to have the Government prepare and produce a summary of expert opinion testimony which it intends to introduce. However, the Government does not currently intend to call an expert witness. If the Government decides to have an expert witness testify, the Government represents that it will comply with its obligations under

Fed. R. Crim. P. Rule 16(a)(1)(G) and also provide any reports or curriculum vitae well in advance of any expert testimony. Defendant's motion is therefore **denied.**

### H. Leave to File Additional Motions

Defendant seeks permission to file additional motions as necessary until a trial date is set. The Government does not oppose Defendant's motion. Accordingly, Defendant's motion to file additional motions is **granted** to the extent that such motions are limited to issues raised by future Government disclosures.

### III. CONCLUSION

For the foregoing reasons, Defendant's pretrial motion, ECF No. 19, is **denied in part and granted in part.** An appropriate Order accompanies this Opinion.

Dated: September 12, 2022

WILLIAM J. MARTINI, U.S.D.J.

10